IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DEBRA FISHBECK,<br>    Plaintiff | § § § | |
| v. | § § | CIVIL ACTION NO. \_\_\_\_\_<br>JURY TRIAL |
| LAVACA COUNTY, TEXAS, CHARLES KEITH MUDD, EDWARD PUSTKA, RONALD BERCKENHOFF, NEIL FRANK BATES, DENNIS KOCIAN, and MICHAEL FUHHR,<br>    Defendants | § § § § § § | |

## ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:**

NOW COMES Plaintiff, DEBRA FISHBECK ("Ms. Fishbeck") and files this Original Complaint and Demand for Jury Trial against Defendants LAVACA COUNTY, TEXAS ("Lavaca County"), CHARLES KEITH MUDD ("Judge Mudd"), EDWARD PUSTKA ("Commissioner Pustka"), RONALD BERCKENHOFF ("Commissioner Berckenhoff"), NEIL FRANK BATES ("Commissioner Bates"), DENNIS KOCIAN ("Commissioner Kocian") and MICHAEL FUHHR ("Mr. Fuhhr") (collectively, "Defendants") and for cause, respectfully shows the following:

### I. Jurisdiction and Venue:

1.  Plaintiff's claims are brought pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 et seq.), 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the United States Constitution, and Texas law.

1

2. This court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in the Southern District of Texas, Victoria Division under 28 U.S.C. § 1391(b) because the unlawful acts alleged herein were committed in this district.

4. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

## II. Parties:

5. Plaintiff, DEBRA FISHBECK, is a resident of Lavaca County, Texas.

6. Defendant, LAVACA COUNTY, TEXAS, is a Texas county. Lavaca County may be served by serving its county judge, the Honorable Mark Myers, at the Lavaca County Courthouse, 109 N. La Grange, Hallettsville, Texas 77964. Lavaca County acted or failed to act at all times through its employees, agents, representative, and/or chief policymakers, including the County's Commissioners, all of whom acted under the color of State law at all relevant times. Lavaca County's policies, practices, and/or customs were the moving force behind the federal law and constitutional violations complained of herein and resulted in the damages asserted in this Complaint.

7. Defendant CHARLES KEITH MUDD ("Judge Mudd"), was at all times relevant to this complaint, the County Judge for Lavaca County, Texas, and as such, is responsible for the acts and omissions of Lavaca County, Texas. Defendant CHARLES KEITH MUDD is being sued in his official and individual capacity and may be served at 104 E 5th Street, Hallettsville, Texas 77964, or wherever else he may be found.

8. Defendant EDWARD PUSTKA ("Commissioner Pustka") was, at all times relevant to this complaint, the Precinct 1 Commissioner for Lavaca County, Texas, and as such, is responsible for the acts and omissions of Lavaca County, Texas. Defendant EDWARD PUSTKA is being sued in his official and individual capacity and may be served at 316 Hwy 77S, Hallettsville, Texas 77964, or wherever else he may be found.

9. Defendant RONALD BERCKENHOFF ("Commissioner Berckenhoff") was, at all times relevant to this complaint, the Precinct 2 Commissioner for Lavaca County, Texas, and as such, is responsible for the acts and omissions of Lavaca County, Texas. Defendant RONALD BERCKENHOFF is being sued in his official and individual capacity and may be served at 101 Church Street, Moulton, Texas 77975, or wherever else he may be found.

10. Defendant NEIL FRANK BATES ("Commissioner Bates") was, at all times relevant to this complaint, the Precinct 3 Commissioner for Lavaca County, Texas, and as such, is responsible for the acts and omissions of Lavaca County, Texas. Defendant NEIL FRANK BATES is being sued in his official and individual capacity and may be served at 213 E. 11th Street, Shiner, Texas 77984, or wherever else he may be found.

11. Defendant DENNIS KOCIAN ("Commissioner Kocian") was, at all times relevant to this complaint, the Precinct 4 Commissioner for Lavaca County, Texas, and as such, is responsible for the acts and omissions of Lavaca County, Texas. Defendant DENNIS KOCIAN is being sued in his official and individual capacity and may be served at 16323 FM 531, Hallettsville, Texas 77964, or wherever else he may be found.

12. Defendant MICHAEL FURRH ("Mr. Furrh") is the current LCRS Director for Lavaca County, Texas. Mr. Furrh is being sued in his individual capacity and may be served at 906 N. Texana, Hallettsville, Texas 77964, or wherever else he may be found.

## III. Facts:

13.   This lawsuit is the result of Lavaca County, Texas, acting under the color of law, by and through its County Judge and Commissioners, wrongfully terminating Ms. Debra Fishbeck's employment.

14.   The Lavaca County Rescue Service ("LCRS") started as a volunteer-based organization in 1973. Ms. Fishbeck began working for the LCRS as a volunteer in 1991. On August 8, 1998, Ms. Fishbeck was promoted to LCRS Director and became the organizations first full-time employee. Under her leadership, the LCRS grew to include several full-time employees, a fleet of vehicles, and multiple EMS stations. During her 29 years with the LCRS, it never received any funding from the County, instead covering its expenses with revenue generated from its services.

15.   Ms. Fishbeck was supervised by the County Judge and the LCRS budget and operations were subject to approval of the Commissioners' Court.

16.   The Lavaca County Commissioners' Court meeting on July 13, 2020, included a lengthy discussion regarding the LCRS's budget and lost operational revenue since 2018. Ms. Fishbeck attended the meeting and answered every question asked of her by the County Judge and Commissioners. The Court convened to a private executive session that lasted about an hour.

17.   Then, on July 13, 2020, after 22 years of dedicated, tireless service to the residents of Lavaca County, the Commissioners Court voted to terminate Ms. Fishbeck's employment.

18.   Regarding Ms. Fishbeck's termination, Judge Mudd stated: "It's never easy to make this call. It's no different than a football team looking for a new coach. Sometimes a change is needed to go in a different direction." *Court Dismisses Lavaca Rescue Service Director*, Hallettsville Tribune-Herald, July 15, 2020, at 1.

19. There was no discussion about complaints lodged against Ms. Fishbeck. There was no discussion about her ability to do the job. There was no discussion about prior warnings made to Ms. Fishbeck regarding her performance. Even though the Commissioners Court wanted to blame Ms. Fishbeck for the lost revenue, it was clear she did not make the changes that lead to the shortfall, and, in any event, the County Judge and Commissioners knew about the lost revenue well before the July 13, 2020, Commissioners' Court meeting, but chose to do nothing about it.

20. Judge Mudd and the Commissioners didn't want Ms. Fishbeck as the LCRS Director. They wanted a new coach. So, they fired Ms. Fishbeck.

21. Ms. Fishbeck is a cancer patient; her husband was injured in a workplace accident in 2019. After being fired, she had no income and was forced to pay expensive insurance premiums monthly to have access to life-saving medical care and treatment. Ms. Fishbeck had no choice but to apply for unemployment. It was during the Texas Workforce Commission investigation related to her unemployment claims that Lavaca County asserted, for the first time, reasons why Ms. Fishbeck was fired. Other, of course, than they wanted a new coach.

22. These alleged reasons include:

   1. complaints from the general public about the overall performance of LCRS;

   2. Complaints from past and current employees about Ms. Fishbeck's performance;

   3. Complaints from local hospital administration about Ms. Fishbeck's performance;

   4. Lost operational revenue; and

   5. Performance shortfalls which the County described as lagging 911 response times; lack of cleanliness of buildings, staff, and personnel; failure to discipline and write up employees; failure to comply with mandatory online medical billing; and issues with an alleged DEA required license.[1]

---

[1] Despite these allegations, the Texas Workforce Commission's investigation concluded: "Our investigation found that your employer fired you for a reason that was not misconduct connected with work."

23. These allegations are without any basis in fact, are manufactured by the Defendants to justify their actions, and are mere pretext for their true motives. It even appears that some, if not all, of these alleged justifications were specifically designed to explain away Judge Mudd's comments of wanting a new coach.

24. Even the most cursory review of Ms. Fishbeck's personnel file exposes these false accusations for what they truly are. Not only are there no complaints documented in Ms. Fishbeck's personnel file that would justify her termination, there are no complaints documented in her personnel file at all. There are no records of complaints against her or LCRS made by the general public. There are no records of complaints against her or LCRS made by employees. There are no records of complaints against her or LCRS made by local hospitals. Nothing at all.

25. The performance shortfalls alleged by the County were never communicated to Ms. Fishbeck and it is believed, as detailed herein, they did not exist at the time she was terminated. There are no records in Ms. Fishbeck's personnel file indicating she was given notice that 911 response times were lagging. There are no records Ms. Fishbeck was ever told that the cleanliness of the buildings, staff, and personnel needed attention. There are no records indicating that the County believed she was not properly managing her employees; indeed, the allegation that Ms. Fishbeck failed to discipline or write up her employees is factually incorrect – she disciplined employees when their behavior warranted discipline. Likewise, the allegation Ms. Fishbeck failed to comply with mandatory online billing is factually incorrect – LCRS utilized online billing systems for Medicare and patient care reports. Finally, the allegation that Ms. Fishbeck committed a "major violation" of a Drug Enforcement Agency ("DEA") requirement to have a license to purchase, store, and administer narcotics is, once again, factually incorrect. The LCRS operated, at all times while Ms. Fishbeck was Director, under the DEA License of Dr. Timothy J. Wagner,

the LCRS Medical Director. During Ms. Fishbeck's tenure, this was a common, DEA approved, practice for EMS agencies. On information and belief, many, if not all of these allegations, were manufactured by Defendants well after Ms. Fishbeck was terminated.

26. Likewise, there are no records of reprimands made by Ms. Fishbeck's supervisors against her. Ms. Fishbeck was never given any verbal warnings regarding her performance. There are no records of counseling addressing any alleged deficiencies in her performance. Ms. Fishbeck was never placed on probation or suspension. She was never provided notice of any policy she was alleged to have violated. She was never given any notice that she may be discharged if she continued to violate such policies. It's also important here to note that the lack of disciplinary records in Ms. Fishbeck's personnel file stands in stark contrast to the Progressive Discipline structure adopted in Lavaca County's Personnel Handbook to address employee behavior.

27. Ms. Fishbeck's personnel file is completely devoid of any behavior that would justify her termination. Rather, her file shows a competent, dedicated County employee and 22 years of exceptional service to Lavaca County. Her file also supports her contention that she was wrongfully terminated, without cause, and without the due process she, as a public employee, was entitled to under the Constitution of the United States of America.

28. Likewise, the County's allegations that Ms. Fishbeck was either responsible for lost operational revenue or failed to notify the Commissioners' Court of the lost revenue are complete fabrications and do not justify her termination.

29. Prior to 2018, LCRS would routinely make "out-of-county" transports, transporting patients from Lavaca County to hospitals or other treatment facilities in other counties. This was a very lucrative business for the LCRS. In September 2018, Judge Tramer Woytek[2] made the

---

[2] Judge Tramer Woytek was the Lavaca County Judge in September 2018.

decision to terminate these out-of-county runs, not Ms. Fishbeck. This is a well-documented fact acknowledged multiple times by Judge Mudd.[3]

30. After 2018, LCRS generally only made out-of-county transports when there were multiple patients, and the private transport service was not available. However, Judge Mudd himself terminated these limited out-of-county transports in March 2020 when the COVID-19 pandemic hit Lavaca County.

31. Furthermore, Ms. Fischbeck was transparent with LCRS operations and briefed Judge Mudd regarding the LCRS budget and decreased revenue immediately upon him taking office. On or about February 28, 2020, less than one week after Judge Mudd took office, Ms. Fishbeck provided Judge Mudd with an Excel spreadsheet showing the decrease in revenue resulting from the termination of out of county runs. Prior to Ms. Fishbeck's termination, Judge Mudd acknowledged on multiple occasions, both privately to Ms. Fishbeck and publicly, that the financial restraints created by the prior administration made LCRS operations difficult, at best. Additionally, after Ms. Fishbeck was terminated, Judge Woytek was quoted by the Hallettsville Tribune-Herald, as saying, "To say no one on the court was informed about the issues with that service up to now is simply not an accurate assessment." *LCRS*, Hallettsville Tribune-Herald, August 5, 2020, at 12. Again, these allegations are without merit and are mere pretext offered to justify Defendants' wrongful actions.

32. On information and belief, Judge Mudd, the Commissioners, and Mr. Fuhhr began working on a plan to replace Ms. Fishbeck with Mr. Fuhhr as LCRS Director well before she was terminated on July 13, 2020. On information and belief, Mr. Fuhhr was witnessed bringing coffee to the Court house on at least three separate occasions in the months prior to Ms. Fischbeck's termination. On

---

[3] Commissioner Kocian was also aware that Judge Wetyok terminated out-of-county transports in 2018 and it is believed the other Commissioners were made aware of this well before Ms. Fishbeck was terminated.

information and belief, the Commissioners used Mr. Fuhhr to prepare questions for Ms. Fishbeck during the July 13, 2020, Commissioners' Court meeting. During the meeting, Commissioner Bates referenced a "Shiner City Councilman well versed in EMS operations" – this Shiner City Councilman is Mr. Fuhhr. On information and belief, Mr. Fuhhr was at the EMS Station the day after Ms. Fishbeck was fired, acting as the new LCRS Director and filling out paperwork to remove Ms. Fishbeck as the Administrator of Record for LCRS.

33. Unfortunately, Ms. Fishbeck is not the first older female employee Judge Mudd terminated during his tenure as Lavaca County Judge. On information and belief, Judge Mudd terminated two other female employees without notice and without providing any reason. It is obvious that despite any other affinity Judge Mudd or the Commissioners had with Mr. Fuhhr, Ms. Fishbeck's gender and age played a significant role in her termination. She was more qualified than Mr. Fuhhr and she had more experience than Mr. Fuhhr. Nonetheless, she was set up to fail, she was terminated, and then she was replaced by a much younger male.[4]

34. The County alleged in its response to Ms. Fishbeck's EEOC claim they could not have favored a younger or opposite gendered person over her because they appointed Melissa Leopold, a LCRS Supervisor, as interim Director. It is believed Mr. Fuhhr, Judge Mudd, and the Commissioners worked out the timing of Ms. Leopold's appointment as interim director and Mr. Fuhhr's hiring as the new director well before Ms. Fishbeck was terminated. Ms. Leopold was already an LCRS Supervisor, was familiar with LCRS operations, and had acted as Director previously when Ms. Fishbeck was out of the office receiving cancer treatments. Further, on information and belief, Judge Mudd specifically told Ms. Leopold her appointment as Interim Director would only last six weeks. It is difficult, if not impossible, to estimate how long an interim

---

[4] It is believed Mr. Fuhhr was 35 at the time he was hired by the County.

appointment will last if you haven't posted the job vacancy, collected resumes or applications, or conducted interviews. Rather than show the County's lack of animus towards Ms. Fishbeck's age and gender, the appointment of Ms. Leopold as Interim Director is believed to be nothing more than a convenient solution for Defendants while they executed their plan to place Mr. Fuhhr as the new LCRS Director.

35. Perhaps most telling of all, Mr. Fuhhr was immediately treated more favorably than Ms. Fishbeck to an astonishing degree. As soon as Mr. Fuhhr was hired, the County resumed out-of-county transports and gave the LCRS $1,000,000 to operate. When Ms. Fishbeck was director, she was given nothing, even with an operational shortfall that was clearly not her doing. Further, she was restricted from completing out-of-county transports, even though these may have been able to make up some of the operational shortfall.

36. Mr. Fuhhr was given a higher starting salary than Ms. Fishbeck's salary when she was terminated. Ms. Fishbeck's salary was $57,000 annually with approximately $1,700 annually in longevity pay. Mr. Fuhhr's starting salary is believed to be $75,000 – $16,300 more annually than Ms. Fishbeck was paid for doing the same role.

37. Mr. Fuhhr was also allowed to immediately hire an assistant. Ms. Fishbeck was never allowed to hire an assistant and had difficulty keeping staff because of low pay and budget issues that were not her fault. Mr. Fuhhr's assistant's starting salary is believed to be $64,500—again, significantly higher than Ms. Fishbeck was making, and for taking on much less responsibility. It will likely come as no surprise that Mr. Fuhhr's assistant is also a younger male.

38. On information and belief, during a LCRS meeting in August 2020, Judge Mudd told LCRS staff that Mr. Fuhhr has an "open checkbook," which is an accurate summary of the way Mr. Furrh was treated. Ms. Fishbeck never received any of the support provided to Mr. Fuhhr. But

Judge Mudd and the Commissioners had their new coach in place, and they were going to do whatever it took to make him successful.

39. Unfortunately, Ms. Fishbeck's humiliation did not end with her public, wrongful termination. Judge Mudd and Mr. Fuhhr have on several occasions made public comments, provided newspaper interviews, and posted messages to Facebook defaming Ms. Fishbeck's character, her professional competence, and even suggesting that she may have violated federal drug laws as LCRS Director, none of which are true. These statements constitute defamation.

40. Ms. Fishbeck has suffered significant financial damages resulting from her wrongful termination. She has lost her salary and the opportunity to continue working until retirement. She lost her insurance benefits, and now is forced to pay out-of-her pocket each month for access to insurance that provides her with life-saving medical care and treatment. She lost the ability to continue to save for retirement and the matching benefits the County provided. She has lost the years of growth and interest in her retirement portfolio. She has lost the ability to delay social security benefits, resulting in less social security income during her future retirement than she anticipated. She has also suffered extreme emotional distress as a direct and proximate result of her wrongful termination and defamation. Hallettsville is a small, tight-knit community. But because of the County's actions, Ms. Fishbeck no longer feels comfortable in her hometown or able to go out in public without embarrassment.

41. Ms. Fishbeck brings suit against Defendants seeking the full measure of all damages allowed her by law, including all actual past and future damages, all consequential damages, punitive damages as allowed by law, and attorney's fees and costs.

### IV. EEOC Action:

42. Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

43. Ms. Fishbeck timely filed a Charge of Discrimination alleging sex discrimination, disability discrimination, and age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about October 27, 2021, Ms. Fishbeck received her Dismissal and Notice of Rights letter from the EEOC for her Charge of Discrimination. A true and correct copy of this Dismissal and Notice of Rights is attached hereto as Exhibit A and incorporated by reference verbatim.

45. Ms. Fishbeck has satisfied all statutory prerequisites for filing this action and has filed this action within ninety (90) days after receipt of her Dismissal and Notice of Rights letter from the EEOC.

### V. Causes of Action:

**A.  Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)**

46. Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

47. At all relevant times, Ms. Fishbeck, as a woman, is a member of a protected class covered by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

48. At all relevant times, Ms. Fishbeck was an employee of Defendants and Defendants were an employer as that term is defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

49. As described in detail in this complaint, Defendants intentionally, willfully, and knowingly discriminated against Ms. Fishbeck based on her sex in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq. by subjecting her to disparate treatment and terminating her employment.

50. Ms. Fishbeck's sex was a motivating factor in Defendants' decision to take discriminatory actions against her, even if her sex was not the only factor that motivated the Defendants.

51. Defendants' actions were willful, deliberate, and intended to cause Ms. Fishbeck harm and/or were committed with reckless disregard for the harm caused to Ms. Fishbeck. Further, Defendants' actions deprived Ms. Fishbeck of her federally protected rights.

52. As a direct and proximate result of Defendants' discrimination, Ms. Fishbeck has suffered damages, including loss of income and benefits, emotional distress, inconvenience, humiliation, and other indignities in an amount to be determined at trial.

53. Ms. Fishbeck is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, punitive damages, front pay in lieu of reinstatement, attorney's fees and costs, and all other legal and equitable relief to which she may be entitled.

**B.     Americans With Disabilities Act (42 U.S.C. § 12101 et seq.)**

54. Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

55. Ms. Fishbeck is, and at all relevant times, was a qualified individual with a disability as that term is defined under the ADA, 42 U.S.C. § 12102(1), because she suffers from cancer, which substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendants as a person with such impairments.

56. At all relevant times, Ms. Fishbeck was able to perform the essential functions of her job with or without accommodation.

57. Defendants intentionally discriminated against Ms. Fishbeck by terminating her employment went she was on modified work activities as a result of her cancer treatments. This constitutes unlawful disability discrimination against Ms. Fishbeck in violation of the ADA.

58. Defendants acted in bad faith, willful and wanton disregard, and/or in reckless disregard of, Ms. Fishbeck's rights under the ADA.

59. As a direct and proximate result of Defendants' intentional discrimination, Ms. Fishbeck has suffered out-of-pocket losses and has been deprived of job-related benefits, including wages and other benefits to be established at trial.

60. Defendants' actions have caused, and will continue to cause, Ms. Fishbeck to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

61. Ms. Fishbeck is entitled to damages including lost compensation and lost benefits, front pay in lieu of reinstatement, compensatory damages, punitive damages, her attorney's fees and costs of litigation, and all other relief to which she may be justly entitled.

**C.    Age Discrimination in Employment Act (26 U.S.C. § 621 et seq.)**

62. Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

63. Ms. Fishbeck is 62 years old, and a member of the protected class covered by the Age Discrimination in Employment Act, 29 U.S.C. § 623(a).

64. At all relevant times, Ms. Fishbeck was well qualified and able to perform the essential functions of her job.

65. As described in detail in this complaint, Defendants intentionally, willfully, and knowingly discriminated against Ms. Fishbeck based on her age in violation of the ADEA, 29 U.S.C. § 621 et seq. by subjecting her to disparate treatment and terminating her employment.

66. Ms. Fishbeck's age was a motivating factor in Defendants' decision to take discriminatory actions against her, even if her age was not the only factor that motivated the Defendants.

67. Defendants' actions were willful, deliberate, and intended to cause Ms. Fishbeck harm and/or were committed with reckless disregard for the harm caused to Ms. Fishbeck. Further, Defendants' actions deprived Ms. Fishbeck of her federally protected rights.

68. As a direct and proximate result of Defendants' discrimination, Ms. Fishbeck has suffered damages, including loss of income and benefits, emotional distress, inconvenience, humiliation, and other indignities in an amount to be determined at trial.

69. Ms. Fishbeck is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, punitive damages, front pay in lieu of reinstatement, attorney's fees and costs, and all other legal and equitable relief to which she may be entitled.

**D.  Violation of Constitutional Rights Under 42 U.S.C. § 1983**

70. Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

71. Acting under the "color of law," Defendants deprived Ms. Fishbeck of her constitutionally protected substantive and procedural due process rights and denied her equal protection under the laws of the United States of America.

72. Ms. Fishbeck has a vested property right in her employment. *See City of Houston v. Williams*, 290 S.W.3d 260, 269 (Tex. App. – Houston [14th Dist.] 2009, pet. denied). Defendants' termination of Ms. Fishbeck's employment was arbitrary and capricious and in clear violation of

federal anti-discrimination laws, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. Further, Defendants' conduct violated Ms. Fishbeck's substantive due process rights protected by the Fifth and Fourteenth Amendments to the Constitution of the United States.

73. Defendants terminated Ms. Fishbeck without adhering to the Progressive Discipline structure adopted by the County to address problems with employee behavior. As such, Defendants also denied Ms. Fishbeck the procedural due process rights contained in the Fifth and Fourteenth Amendments to the Constitution of the United States.

74. Ms. Fishbeck brings this suit this suit under 42 U.S.C. § 1983 and seeks the full measure of damages allowed to her by law, including all actual, consequential, and punitive damages, and costs and attorney's fees as allowed by law.

**E.     Conspiracy to Violate Constitutional Rights Under 42 U.S.C. § 1985**

75. Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

76. Defendants acted together for the purpose of depriving Ms. Fishbeck of the equal privileges and immunities under the laws of the United States.

77. In furthering this conspiracy, Defendants wrongfully terminated Ms. Fishbeck's employment, depriving Ms. Fishbeck of having and exercising her rights and privileges as a citizen of the United States; more specifically, Defendants' conspiracy denied her constitutionally protected substantive and procedural due process rights, denied her equal protection under the laws of the United States of America and the Constitution, and violated federal anti-discrimination laws.

78.     Ms. Fishbeck brings this suit this suit under 42 U.S.C. § 1985 and seeks the full measure of damages allowed to her by law, including all actual, consequential, and punitive damages, and costs and attorney's fees as allowed by law.

**F.     Defamation**

79.     Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

80.     Defendant Judge Mudd and Defendant Mr. Fuhhr published statements in the Hallettsville Tribune-Herald and online via Facebook regarding Ms. Fishbeck, her performance as LCRS Director, her character, and her alleged violation of federal law. These statements were defamatory and false. Defendants made these statements acting with actual malice or negligence. Additionally, or in the alternative to the extent necessary, Defendants are strictly liable for their defamation of Ms. Fishbeck.

81.     Ms. Fishbeck has suffered damages as a direct and proximate result of these wrongful acts and brings this suit for defamation and seeks the full measure of damages allowed to her by law, including all actual, consequential, and punitive damages, and costs and attorney's fees as allowed by law.

**G.     Civil Conspiracy**

82.     Ms. Fishbeck incorporates the facts and allegations contained above as though fully set forth herein verbatim.

83.     Ms. Fishbeck seeks to hold all Defendants jointly and severally liable for the tortious actions of Judge Mudd and Mr. Fuhhr. Defendant Commissioners acted together with Judge Mudd and Mr. Fuhhr to wrongfully terminate Ms. Fishbeck's employment and hire Mr. Fuhhr as LCRS Director instead.

84. The object of this conspiracy was unlawful and each of the Defendants had a meeting of the minds regarding the purpose and course of action. Defendants Judge Mudd and Mr. Fuhhr committed unlawful, overt acts to further the goals of this conspiracy. More specifically, Judge Mudd and Mr. Fuhhr defamed Ms. Fishbeck in an attempt to conceal the nature of the unlawful purpose, being the unjust and wrongful termination of Ms. Fishbeck's employment.

85. Ms. Fishbeck has suffered damages as a direct and proximate result of these wrongful acts and respectfully prays all Defendants in this matter be held jointly and severally liable.

86. Ms. Fishbeck brings this suit for civil conspiracy and seeks the full measure of damages allowed to her by law, including all actual, consequential, and punitive damages, and costs and attorney's fees as allowed by law.

WHEREFORE, Plaintiff, Ms. Fishbeck, prays that Defendants be cited to appear and answer, and on final trial, that the Court enter judgment for Plaintiff and against Defendants for the following:

1. Full back from the date of Plaintiff's termination to the date of judgment;

2. Full front pay due to Plaintiff for a reasonable period following judgment, calculated as of the date of judgment;

3. Compensatory damages as allowed by law resulting Defendants' conduct;

4. Punitive damages as allowed by law resulting from Defendants' conduct;

5. All employer benefits she would have enjoyed had she not been discriminated against;

6. Reasonable and necessary attorney's fees;

7. Pre- and post-judgment interest as allowed by law;

8. Costs of suit; and

9. For all such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

Law Office of Jeremy D. Allen, PLLC


By:   /s/ Jeremy D. Allen          
Jeremy D. Allen
Texas Bar No. 24061075
Email: jeremy@allen-legal.com
22211 IH-10 West, Suite 1206
SAN ANTONIO, TX 78257
Tel. (210) 686-4482
Fax. (210) 855-4353
**Attorney for Plaintiff, Debra Fishbeck**