United States District Court
Southern District of Texas
**ENTERED**
February 28, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **DEBRA FISHBECK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:22-CV-00002** |
| | § | |
| **LAVACA COUNTY, TEXAS, CHARLES KEITH MUDD, EDWARD PUSTKA, RONALD BERCKENHOFF, NEIL FRANK BATES, DENNIS KOCIAN, and MICHAEL FURRH,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Debra Fishbeck worked as Director of the Lavaca County Rescue Service from 1998 until she was fired in 2020 by a vote of the Lavaca County Commissioners Court. Fishbeck is in her sixties and suffers from cancer. She is the sole provider for herself and her husband. Fishbeck believes she was wrongfully terminated because of her sex, disability, and age. She also believes she was defamed in the process.

Pending before the Court is Defendants' Motion for Summary Judgment. (Dkt. No. 26). For the reasons below, the Court **GRANTS in part** and **DENIES in part** the Motion.

## I. BACKGROUND[1]

Fishbeck worked as Director of the Lavaca County Rescue Service ("LCRS") from 1998 until July 2020. (Dkt. No. 26 at 1). LCRS provides emergency medical services ("EMS"). (*See* Dkt. No. 10 at 4). Fishbeck's job duties included overseeing LCRS's budget, licensure, and personnel, as well as administering care as a paramedic in emergency vehicles. (Dkt. No. 26 at 3); (Dkt. No. 26-1 at 8–10). When she was hired, Fishbeck was LCRS's first full-time employee. (Dkt. No. 10 at 4). By 2020, she supervised eight full-time employees and ten partial-paid volunteers. (Dkt. No. 26-1 at 9). Lavaca County Judge Keith Mudd[2] was Fishbeck's supervisor, and the Lavaca County Commissioners Court approved LCRS's budget and operations. (Dkt. No. 10 at 2, 4). The Commissioners Court comprised County Judge Mudd along with Defendants Edward Pustaka, Ronald Berckenhoff, Neil Frank Bates, and Dennis Kocian. (*Id.* at 2–4).

At Mudd's request, Fishbeck attended the July 13, 2020, Commissioners Court meeting. (Dkt. No. 26 at 4–5). The Commissioners Court wanted information about LCRS's budget and operations. (*See* Dkt. No. 26-1 at 11); (*see also* Dkt. No. 26 at 4). During the session, Fishbeck answered questions, and the Commissioners went into a private executive session shortly afterward. (*See also* Dkt. No. 26-1 at 11–12, 20). When they returned, the Commissioners Court called for a vote and unanimously fired Fishbeck,

---

1 Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

2 Defendant Keith Mudd was the County Judge at all relevant times. (Dkt. No. 10 at 4).

effective immediately. (Dkt. No. 26 at 5); (Dkt. No. 26-1 at 20); (Dkt. No. 26-6 at 1). Fishbeck was in her early sixties. (Dkt. No. 26 at 2).

After firing Fishbeck, Lavaca County formed a committee to interview and hire a replacement Director for LCRS. (*Id.* at 5); (*see also generally* Dkt. No. 26-10). Six weeks later, the committee hired Defendant Michael Furrh, a 35-year-old male, as Fishbeck's permanent replacement. (Dkt. No. 26 at 5–6); (*see also* Dkt. No. 26-1 at 30–31); (Dkt. No. 26-10 at 4).

Fishbeck asserts that Lavaca County fired her because of her age, gender, and disability. (*See* Dkt. No. 10 at 12–15). Fishbeck "was a white, female employee of Lavaca County, Texas over 40 years of age," (Dkt. No. 26 at 3), and was diagnosed with cancer in 2007, (*id.* at 4). Fisher worked full-time without limitations until she needed a surgical procedure in March 2020. (*Id.*). On March 2, 2020, she went on Family and Medical Leave Act ("FMLA") leave through May 2, 2020. (*Id.*). She briefly took time off on May 19 and May 20 because of an infection from her earlier procedure. (*Id.*). But she otherwise continued to work without need for accommodation until July, when she was fired. (*Id.*).

Fishbeck asserts several claims under both federal and state law. (*See* Dkt. No. 10 at 12–18). The federal claims are: (1) sex discrimination under Title VII, disability discrimination under the Americans with Disabilities Act ("ADA"); (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (3) violations of her constitutional rights under 42 U.S.C. § 1983; and (4) conspiracy to violate her civil rights under 42 U.S.C. § 1985. (*Id.* at 12–17). The Texas state-law claims are defamation and civil conspiracy. (*Id.* at 17–18).

Defendants moved for partial dismissal of Fishbeck's claims. (Dkt. No. 13). After briefing was complete, the Court entered an Order on September 29, 2022, dismissing the state-law claims against all Defendants except Furrh in his individual capacity. (Dkt. No. 21). Defendants now move for summary judgment on all remaining claims. (Dkt. No. 26). Fishbeck has responded, (Dkt. No. 27), and Defendants have replied, (Dkt. No. 28).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. EVIDENTIARY OBJECTIONS

Defendants object to certain summary-judgment evidence introduced by Fishbeck, specifically Exhibits 1–4 and part of Exhibit 6. (Dkt. No. 28 at 1–2). Exhibit 1 is a Facebook

message that appears to be from County Judge Mudd to Fishbeck. (Dkt. No. 27-1). Exhibit 2 is a text-message thread allegedly between Fishbeck and Mudd. (Dkt. No. 27-2). Exhibit 3 is an undated letter from Fishbeck to then-County Judge Woytek from Fishbeck outlining LCRS's staffing and financial difficulties. (Dkt. No. 27-3). Exhibit 4 is a letter from Fishbeck to the Commissioners Court describing LCRS's budget and requesting assistance, followed by a budget spreadsheet with proposed changes. (Dkt. No. 27-4). Exhibit 6 contains Fishbeck's responses to interrogatories from two Defendants. (Dkt. No. 27-6). The first half includes her answers to interrogatories from Lavaca County, (*id.* at 3–12), while the second half contains her responses to interrogatories from Mudd, (*id.* at 13–23).

Defendants object to (1) Exhibits 1 and 2 as unauthenticated, hearsay, and irrelevant; (2) Exhibits 3 and 4 as hearsay; and (3) the first set of answers in Exhibit 6—Fishbeck's responses to Lavaca County's interrogatories—as hearsay due to a lack of verification. (Dkt. No. 28 at 1–2). The Court addresses the three types of evidentiary objections—authentication, relevance, and hearsay—in turn.

### A. AUTHENTICATION

As an initial matter, "evidence need not be authenticated or otherwise presented in an admissible form" at the summary-judgment stage. *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (citations omitted). Courts "typically consider evidence unless the objecting party can show that it could not be reduced to an admissible form at trial." *In re Ala. & Dunlavy, Ltd.*, 983 F.3d 766, 774 (5th Cir. 2020) (citations omitted).

Exhibits 1 and 2 could be authenticated with testimony from Mudd and Fishbeck at trial. And Fishbeck included a verification with Exhibit 6. (Dkt. No. 27-6 at 24). Even if this verification applies only to the second set of interrogatories, the first set is not barred due to a lack of authenticity because Fishbeck could provide a verified version of those interrogatories or testify to their contents at trial. Therefore, Defendants' authentication objections are overruled.

### B. RELEVANCE

The relevance objection to Exhibits 1 and 2 are similarly unpersuasive. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Fishbeck offers the messages with Mudd to demonstrate that they met in late February 2020 "to discuss the LCRS Budget, revenue, and operational challenges." (Dkt. No. 27 at 4). She presents them as evidence of pretext—that members of the Commissioners Court were aware of the budget deficits for which they now blame Fishbeck. While the messages do not specify what Fishbeck and Mudd discussed in their meeting, relevance is not a demanding standard. The messages make it more probable that Fishbeck discussed operational challenges with Mudd before she was fired for alleged mismanagement of the budget. The evidence is relevant to her claims.

### C. HEARSAY

Finally, as to hearsay, an opposing party's statement offered against that party is not hearsay. Fed. R. Evid. 801(d)(2). Additionally, statements of a declarant's then-

existing state of mind fall under an exception to the rule against hearsay. *Id.* at 803(3). Further, "a statement is not hearsay if it is offered to prove the statement's effect on the listener." *United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018).

The messages from Mudd in Exhibits 1 and 2 are his own statements. (Dkt. Nos. 27-1, 27-2). Because he is an opposing party, they are not hearsay. Fed. R. Evid. 801(d)(2).

The letters from Fishbeck to then-County Judge Woytek and the Commissioners Court in Exhibits 3 and 4 would be hearsay if introduced to prove that LCRS was experiencing budget problems—that is, to prove that what the letters assert is *true*. *See id.* at 801(c)(2) (defining hearsay as a statement offered "to prove the truth of the matter asserted in the statement"), 802 (barring hearsay evidence). But they may properly be considered for two other purposes. First, they are admissible as evidence of Fishbeck's then-existing state of mind under Rule 803(3): her perception that LCRS had budgetary issues that required discussion with the Commissioners Court. Second, they may be considered for their effect on the listener as an indication that the Commissioners Court was aware of Fishbeck's concerns regarding the budget.[3]

Accordingly, the Court will not consider the letters in Exhibits 3 and 4 as evidence that LCRS had budgetary issues. Instead, it considers them only to show that Fishbeck believed there were budgetary problems and that the Commissioners Court was aware of her perception.

---

[3] Because considering the letters solely for their effect on the Commissioners Court does not depend on the truth of the matter asserted (i.e., their relevance lies in the fact that the Commissioners Court was aware of Fishbeck's concerns, not in whether the budget was actually problematic), their use for this limited purpose does not constitute hearsay. *See id.* at 801(c)(2).

### D. LEGISLATIVE-PRIVILEGE OBJECTION

Finally, Defendants object to the Court's consideration of the Lavaca County Budget, (Dkt. No. 27-5), asserting that it is protected by legislative immunity, (Dkt. No. 28 at 3–4). This argument fails for two reasons.

First, Fishbeck is not suing Defendants for passing the budget, which would be covered by legislative immunity. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54–56, 118 S.Ct. 966, 972–73, 140 L.Ed.2d 79 (1998). Instead, she is suing for discrimination, (*see* Dkt. No. 1 at 1), and offers the budget as evidence that the Commissioners Court treated her successor more favorably, (*see* Dkt No. 27 at 4–5).

Second, under the related doctrine of legislative privilege, "a state legislator's common-law absolute immunity from civil actions [also] precludes the *compelled discovery* of documents pertaining to the state legislative process" in some cases. *La Union Del Pueblo Entero v. Abbott* (*Abbott I*), 68 F.4th 228, 239–40 (5th Cir. 2023) (emphasis added); *see La Union del Pueblo Entero v. Abbott* (*Abbott II*), 93 F.4th 310, 322 (5th Cir. 2024) (holding that legislative privilege covers "material prepared for a legislator's understanding of legislation and materials the legislator possesses related to potential legislation"). But legislative privilege—which protects against "compelled discovery"—is waived when otherwise-protected documents are publicly revealed. *Abbott I*, 68 F.4th at 236–37; *see Abbott II*, 93 F.4th at 323. The Lavaca County Budget was made publicly available on August 4, 2020, at 9:45 a.m. *See* Lavaca County, Texas, *Proposed Budget for Fiscal Year 2020–2021*, at 13, https://www.co.lavaca.tx.us/upload/page/2461/Lavaca%20County%20Proposed%20Budget%20%2020202021%20Fiscal%20Year.pdf [https://perma.cc/

N47D-ZNQ6]. That was nearly three years before Fishbeck attached the budget to her Response. (Dkt. No. 27-5) (filed on Feb. 2, 2023). So legislative privilege is waived, *see Abbott I*, 68 F.4th at 236–37, and this objection is overruled.

## IV. DISCUSSION

Moving to the merits of the Motion, Defendants argue that they are entitled to summary judgment on each of Fishbeck's claims. As for Fishbeck's wrongful-termination (age-, disability-, and sex-discrimination) claims, Defendants contend that they have provided legitimate, nondiscriminatory reasons for terminating her, which she cannot show were a pretext for discrimination. (Dkt. No. 26 at 9–14). For her constitutional claims, Defendants contend that (1) she had no property interest in her position and could not have been denied due-process rights; (2) she has failed to identify her equal-protection class; and (3) having failed to establish these claims, Defendants could not have conspired to deprive her of any civil rights. (*Id.* at 15–17). Finally, as to her state-law claims, Defendants assert that Fishbeck's defamation claim is barred by governmental immunity or legislative privilege and that she otherwise fails to prove each element. (*Id.* at 17–19). Because Fishbeck fails to make out a defamation claim, Defendants argue, her state-law conspiracy claim necessarily fails too. (*Id.* at 19).

### A. STATUTORY DISCRIMINATION

Fishbeck asserts that she was fired from her job because of her sex, disability, and age. (Dkt. No. 10 at 12–15). "In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir.

2002)). Title VII, the ADA, and the ADEA only permit recovery against employers and, in the case of the ADA, related *entities*. 42 U.S.C. § 2000e-2(a)(1) (Title VII); 42 U.S.C. § 12111(2) (ADA); 29 U.S.C. § 623(a) (ADEA). There is no individual liability under any of these statutes.[4] Fishbeck's statutory-discrimination claims against the individual Defendants thus fail as a matter of law. That leaves only Lavaca County as a suitable defendant for Fishbeck's statutory-discrimination claims.

"If the plaintiff produces direct evidence that discriminatory animus played a role in the employer's adverse employment decision, the burden of persuasion shifts to the defendant who must prove that it would have taken the same action despite any discriminatory animus." *Nall*, 917 F.3d at 340. In circumstantial evidence cases, courts apply the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g.*, *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (applying the *McDonnell Douglas* framework to an age-discrimination claim); *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 483 (5th Cir. 2023) (disability-

---

4 The Fifth Circuit "has repeatedly rejected any individual liability under Title VII." *Baldwin v. Layton*, 300 F.App'x 321, 323 (5th Cir. 2008) (per curiam) (collecting cases). "Likewise, 'the ADEA provides no basis for individual liability for supervisory employees.'" *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F.App'x 243, 247 (5th Cir. 2017) (some internal quotations omitted) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001)).

And "[w]hile the [Fifth] Circuit has not directly addressed the issue of whether individuals may be held personally liable under the ADA, it interprets the employer provisions in the ADA consistently with similar provisions in Title VII." *McLennan v. Oncor Elec. Delivery Co.*, No. 3:12-CV-00531, 2012 WL 3072340, at *3 (N.D. Tex. July 6, 2012), *report and recommendation adopted*, 2012 WL 3079063 (N.D. Tex. July 30, 2012), *aff'd sub nom. McLennan v. Veitch*, 519 F.App'x 260 (5th Cir. 2013) (per curiam). "Moreover, the federal circuits that have addressed this issue treat the employer provisions [of Title VII and the ADA] similarly, refusing to allow individual liability under both Title VII and the ADA." *Id.* (collecting cases).

discrimination claim); *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 219–20 (5th Cir. 2023) (sex-discrimination claim).

Under *McDonnell Douglas*, "[f]irst, the employee must establish a prima facie case of . . . discrimination; second, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision; and third, the burden shifts back to the employee to present evidence that the employer's reason was a pretext for . . . discrimination." *Nelson v. Tex. Dep't of Transp.*, No. 23-50328, 2023 WL 7986588, at *1 (5th Cir. Nov. 17, 2023) (per curiam). "In determining whether the plaintiff's rebuttal precludes summary judgment, '[t]he question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether this reason was pretextual.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

**1. Sex Discrimination**

Fishbeck alleges that she was fired because of her sex. (Dkt. No. 10 at 12–13). Defendants respond that Fishbeck was terminated because of concerns with her job performance. (Dkt. No. 26 at 11–12). Fishbeck replies that any problems with her job performance were caused by Defendants and are being used as an after-the-fact excuse to cover up her discriminatory termination. (Dkt. No. 27 at 3–6).

Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff alleging gender discrimination must show:

> (1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class.

*Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

Fishbeck has not offered direct evidence of sex discrimination, so the Court applies the *McDonnell Douglas* burden-shifting framework. *See Wallace*, 57 F.4th at 219–20. The Parties do not dispute that Fishbeck has established a prima facie case of sex discrimination. (*See generally* Dkt. Nos. 26–28). She is a woman. (Dkt. No. 26 at 3). She was qualified for the job. (*See id.* at 1). She was fired. (Dkt. No. 26 at 5); (Dkt. No. 26-1 at 20); (Dkt. No. 26-6 at 1). And she was replaced by a man, Furrh. (*See* Dkt. No. 26 at 5–6); (*see also* Dkt. No. 26-1 at 30–31).

Defendants offer the following reasons for Fishbeck's termination, which they allege are legitimate and nondiscriminatory: (1) LCRS's operational revenue declined significantly for three years in a row; (2) LCRS received an unsatisfactory third-party audit of its bookkeeping; (3) an EMT resigned shortly after accepting a job with LCRS because of concerns with the department; (4) Fishbeck did not attend Lavaca County Medical Center meetings for several years; and (5) a lack of cleanliness at LCRS facilities. (Dkt No. 26 at 5, 11–12). The burden now shifts back to Fishbeck to prove that Defendants' proffered reasons are a pretext for sex discrimination. *See Wallace*, 57 F.4th at 219–20.

Fishbeck's rebuttal evidence can broadly be categorized as showing that she was denied assistance from the Commissioners Court while Furrh was immediately given substantial resources. (*See* Dkt. No. 27 at 4–5). Fishbeck urges that all of Defendants' nondiscriminatory reasons were problems caused by an insufficient budget, which they controlled. (*Id.*). She contends that the legitimate business reasons are a pretext because she made the Commissioners Court aware of the budget limitations, but they responded by blaming her for personal shortcomings. (*See id.* at 3–5). Yet after they hired Furrh, he was given every resource (and more) that Fishbeck requested to fix those very deficiencies in the department. (*Id.* at 4–5). In other words, Defendants knew about LCRS's problems, did not give Fishbeck the tools to succeed, and only considered the problems a terminable offense because they wanted to replace her with a man—one whom they equipped with the same resources they withheld from her.

Fishbeck's evidence, when viewed in the light most favorable to her, shows a genuine dispute about whether Defendants' proffered reasons are a pretext. First, Fishbeck alleges that she did not cause LCRS's revenue to decline. Fishbeck informed the Commissioners Court that County Judge Mudd and his predecessor, Woytek, had ended LCRS's ability to run out-of-county transfers, which made up a significant portion of LCRS's revenue. (*See* Dkt. No. 26-1 at 11–12); (Dkt No. 27-4 at 1). Although Fishbeck was ultimately responsible for LCRS's budget, the Commissioners Court's awareness of her concerns about this policy change's impact on the budget puts into dispute whether the Commissioners Court handicapped Fishbeck and then exploited the fallout to blame her for a problem it created—or at least knew about.

Fishbeck also offers the Lavaca County 2021 Fiscal Year Budget as evidence of disparate treatment between her and Furrh. (*See* Dkt. No. 27-5). Among other things, the budget shows that the salary for the LCRS Director increased 27.73% after Fishbeck was fired. (*Id.* at 3); (Dkt. No. 27 at 4). Fishbeck was paid $58,718 annually, while Furrh was paid $75,000. (Dkt. No. 27-5 at 3); (Dkt. No. 27 at 4). Fishbeck was not allotted a budget for an assistant; but in FY 2021, the Commissioners Court approved an allocation of $64,500 to hire an LCRS Assistant Director. (Dkt. No. 27-5 at 3); (Dkt. No. 27 at 4). Fishbeck received no financial support from the County's General Fund to supplement LCRS's operations; but in 2021, the Commissioners Court approved a $1,000,000 transfer to supplement LCRS's revenue for Furrh. (Dkt. No. 27-5 at 1); (Dkt. No. 27 at 4–5).

Fishbeck's evidence shows a genuine dispute about whether Defendants' reasons for firing her are pretextual. Furrh was given resources and opportunities to remedy problems at LCRS in ways that Fishbeck, after alerting Defendants to her concerns, was not. So there is a genuine issue of material fact on Fishbeck's sex-discrimination claim, and as a result, Defendants are not entitled to judgment as a matter of law.

**2. Disability Discrimination**

Fishbeck also alleges that she was fired by the Commissioners Court because of her cancer. (Dkt. No. 10 at 13–14). Defendants argue that, unlike her Title VII claim, Fishbeck cannot even make out a prima facie case of disability discrimination. (Dkt. No. 26 at 12–14). And even if she could, they argue that Fishbeck was fired because of job-performance concerns. (*Id.* at 14).

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, an employee must establish that "(1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was fired on account of her disability." *Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 526 (2022).

The first question is whether Fishbeck has a disability as defined by the ADA. Under the ADA, a person is disabled if she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA defines major life activities in two ways. First, major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Second, a major life activity includes "the operation of a major bodily function." *Id.* § 12102(2)(B). A major bodily function includes, among other things, "normal cell growth." *Id.*

Cancer is an impairment that substantially limits the major life activity of normal cell growth. *See* 29 C.F.R. § 1630.2(j)(3)(iii) ("[C]ancer substantially limits normal cell growth . . . ."); *Trcka v. Atzenhoffer Chevrolet Co.*, No. 6:21-CV-00035, 2023 WL 2672818, at *3 (S.D. Tex. Mar. 27, 2023) ("[C]ancer is considered to be an impairment that substantially limits the major life activity of normal cell growth."); *see also Weed v. Sidewinder Drilling, Inc.*, 245 F.Supp.3d 826, 834 (S.D. Tex. 2017) ("'[D]isability' now includes an impairment that is episodic or in remission if it would substantially limit a major life activity when active; examples include . . . *cancer* . . . ." (emphasis in original)); *Norton v. Assisted Living*

*Concepts, Inc.*, 786 F.Supp.2d 1173, 1185 (E.D. Tex. 2011) (finding that remissive cancer "is capable of qualifying as a disability under the ADA" even if, when active, the cancer constitutes a limitation only on the major life activity of normal cell growth); *Alston v. Park Pleasant, Inc.*, 679 F.App'x 169, 172 (3d Cir. 2017) ("We agree that cancer can—and generally will—be a qualifying disability under the ADA."). Defendants have not established that Fishbeck's cancer is not a disability as a matter of law.

The second element is qualification. Defendants do not dispute that Fishbeck was qualified for the job, despite having cancer. (*See* Dkt. No. 26 at 13–14).

The third element is whether Fishbeck can make a prima facie showing that Defendants fired her "on account of her disability." *Gosby*, 30 F.4th at 526. To establish this element, Fishbeck must show a causal connection between her disability and her discharge. *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847 (5th Cir. 1999); *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam).

A plaintiff "may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *McCoy*, 492 F.3d at 562). "Such temporal proximity must generally be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (per curiam)); *see also id.* (explaining that a five-month lapse is not close enough but up to four months may be sufficient). Another "way for a disabled employee to prove a nexus between an adverse employment decision and her disability is to show that she was either replaced by a non-disabled person or treated less favorably than a non-

disabled employee." *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F.App'x 793, 800 (5th Cir. 2018) (per curiam).

Fishbeck has satisfied the causation element of her ADA prima facie case. She was diagnosed with cancer in 2007, (Dkt. No. 27-6 at 20), and Lavaca County terminated her employment just months after she first took substantial leave due to her cancer—leave protected by the FMLA, (*see generally* Dkt. No. 26-11). Moreover, as previously discussed, Fishbeck was replaced by a non-disabled individual, Furrh, and presents evidence that Defendants treated Furrh more favorably. *See supra* Section IV(A)(1). Finally, Defendants do not dispute the causation element of Fishbeck's ADA prima facie case. (*See* Dkt. No. 26 at 13–14). Instead, they argue only that Fishbeck "cannot establish a prima facie case for discrimination under the ADA because she cannot establish that she suffered from a disability." (*Id.* at 13).

The Court finds that Fishbeck has established a prima facie case of disability discrimination. Although Defendants offer nondiscriminatory reasons for their actions—the same reasons provided to rebut Fishbeck's sex-discrimination claim—Fishbeck's evidence, when viewed in the light most favorable to her, raises a factual dispute as to whether Defendants' proffered reasons for her termination are pretextual, *see supra* Section IV(A)(1). Accordingly, Defendants are not entitled to judgment as a matter of law on Fishbeck's ADA claim.

**3. <u>Age Discrimination</u>**

Fishbeck also alleges that she was fired because the Commissioners Court wanted to replace her with someone younger. (Dkt. No. 10 at 14–15). As before, Defendants

contend that Fishbeck was fired because of concerns with her job performance. (Dkt. No. 26 at 11–12). And Fishbeck again replies that any problems with her job performance were caused by Defendants and are being used as an after-the-fact excuse to cover up her discriminatory termination. (Dkt. No. 27 at 3–6).

The ADEA applies to "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), and it prohibits employers from firing or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, a plaintiff must show that "(1) she was discharged, (2) she was qualified for the position, (3) she was within the protected class when she was discharged, and (4) she was 'either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.'" *Allen*, 63 F.4th at 301 (alteration in original) (quoting *Jackson*, 602 F.3d at 378).

Fishbeck has not provided direct evidence of age discrimination, so the Court again applies the *McDonnell Douglas* burden-shifting framework. *See id.* at 300. The Parties do not dispute that Fishbeck has established a prima facie case of age discrimination. They agree that she was qualified for the job, was fired at age sixty-two, and was replaced by a thirty-five-year-old, Furrh. (*See* Dkt. No. 26 at 1-2, 5-5) (*see also* Dkt. No. 26-1 at 30–31). Because Defendants offered the same reasons—and Fishbeck responds with the same rebuttal evidence—the Court finds the pretext analysis for Fishbeck's sex-discrimination claim equally applicable here. *See supra* Section IV(A)(1).

Accordingly, Defendants are not entitled to summary judgment on Fishbeck's age-discrimination claim.

**B. CONSTITUTIONAL-RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983**

Fishbeck also brings claims against Defendants for violationing her constitutional rights through 42 U.S.C. § 1983. (Dkt. No. 10 at 15–16). "To state a claim under Section 1983, a plaintiff must assert facts to support that a person acting under color of state law denied the plaintiff a right under the Constitution or federal law." *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016); *see* 42 U.S.C § 1983. The definition of "person" under Section 1983 can include local-government units and municipalities. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

Fishbeck alleges that "[a]cting under the 'color of law,' Defendants deprived [her] of her constitutionally protected substantive and procedural due process rights and denied her equal protection under the laws of the United States." (Dkt. No. 10 at 15). Defendants argue that Fishbeck cannot show that any of her constitutional rights were violated. (Dkt. No. 26 at 15–16). The Court addresses each potential constitutional violation in turn.

**1. <u>Procedural Due Process</u>**

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract

need or desire for it." *Id.* at 577, 92 S.Ct. at 2709. She must "have a legitimate claim of entitlement to it," not just "a unilateral expectation of it." *Id.*

"A property interest will exist in continued employment if the right to terminate without cause is eliminated," but "an employee who is terminable at will generally has no constitutionally-protected property interest." *Stem*, 813 F.3d at 210. "A restraint on an employer's discretion to terminate employment at will 'may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated; or it may take the form of a more particularized mutual understanding with the employee.'" *Short v. Gusman*, 806 F.App'x 264, 268 (5th Cir. 2020) (per curiam) (quoting *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003)). But "[t]here is no property right if rules only provide considerations for the exercise of discretion" in terminating the employment. *Stem*, 813 F.3d at 212.

Fishbeck argues that she was denied procedural due process because Lavaca County did not adhere to its discipline policy before firing her. But Lavaca County's personnel policies are very clear that the County is "an 'at will' employer." (Dkt. No. 26-7 at 3). The policies refer to the "at will" nature of the employment several times, (*id.* at 3, 9, 22, 24, 54), and even state that "Lavaca County shall have the right to terminate the employment of any employee for any legal reason, or no reason, at any time either with or without notice," (*id.* at 24).

Fishbeck acknowledged that she had received the Lavaca County Personnel Manual and was responsible for knowing its contents. (Dkt. No. 26-11 at 2–3). She also acknowledged that her "employment [wa]s terminable at will." (*Id.* at 2). Although the

policies include a "Progressive Discipline" section, its terms are discretionary and do not constrain the at-will employment status. (*See* Dkt. No. 26-7 at 51–52) ("[T]he official, Department Head or supervisor *may* choose to begin corrective action at any step, up to and including immediate dismissal . . . ." (emphasis added)). In sum, Fishbeck was an at-will employee and had no property interest in her continued employment. Defendants are therefore entitled to judgment as a matter of law on Fishbeck's procedural-due-process claim.

**2. Substantive Due Process**

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that [s]he had a property interest/right in h[er] employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). As to the second prong, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998) (citing *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223–26, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985)). This means "the plaintiff must show that the decision was 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 631 (5th Cir. 2011) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).

For Fishbeck to make out a substantive-due-process claim, she must prove that she had a property interest in her employment *and* that her termination was arbitrary and capricious. The Court has already found that she does not have a property interest in her continued employment. *See supra* Section IV(B)(1). Defendants are therefore entitled to judgment as a matter of law on Fishbeck's substantive-due-process claim.

**3. <u>Equal Protection</u>**

Fishbeck also brings an equal-protection claim, but she fails to identify the protected class forming the basis of the claim. The Court assumes that it is her sex.[5] The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated people alike. *See* U.S. Const. amend. XIV; *see also City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

"Section 1983 and [T]itle VII are 'parallel causes of action.' Accordingly, the 'inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.'" *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007) (citation omitted) (first quoting *Cervantez v. Bexar Cnty. Civ. Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996); and then quoting *Wallace v. Tex.*

5 To the extent that Fishbeck relies on her age-discrimination claim, the Fifth Circuit has held that Section 1983 claims alleging age discrimination are preempted by the ADEA. *See Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997) (per curiam). The Fifth Circuit has not directly addressed whether the ADA preempts Section 1983 disability claims. But other courts in this circuit have observed that "[p]laintiff[s] cannot assert Section 1983 claims merely by pointing to violations of Title VII, *the ADA*, or the ADEA; [they] must identify federal rights that are independent of these Acts." *Fabela v. Corpus Christi Indep. Sch. Dist.*, No. 2:19-CV-00387, 2020 WL 2576175, at *8 n.15 (S.D. Tex. May 21, 2020) (alterations and emphasis added). In any case, disability is not a suspect classification for equal-protection purposes. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985).

*Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). "But Title VII and § 1983 are different in at least one important way." *Jones v. Hosemann*, 812 F.App'x 235, 238 (5th Cir. 2020) (per curiam). "Critically, '[u]nlike Title VII, § 1983 applies to individuals.'" *Id.* (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640 (5th Cir. 2018) (per curiam)). "And since § 1983 applies to individuals, [courts] must be keenly aware of what § 1983 requires before plaintiffs can seek relief from individuals—namely individual causation." *Id.* To satisfy the individual-causation standard, plaintiffs must show "that each defendant individually engaged in actions that caused the unconstitutional harm." *Id.* at 239. Meanwhile, a Section 1983 claim against a local-government defendant requires proof that the constitutional harm resulted from "official municipal policy." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

As discussed above, Fishbeck has made out her prima facie case of intentional sex discrimination under Title VII and satisfied her burden of disputing Defendants' reasons for firing her. *See supra* Section IV(A)(1). The only question, then, is whether Fishbeck can satisfy the individual-causation requirement as to each of the individual Defendants.

She can. As Defendants recognize, the Commissioners Court "voted unanimously to terminate [Fishbeck's] employment." (Dkt. No. 26 at 1); (Dkt. No. 26-8 at 5). Thus, "each defendant individually engaged in actions that caused the [alleged] unconstitutional harm," *Jones*, 812 F.App'x at 239, by voting to terminate Fishbeck (allegedly) on account of her sex.

As to Lavaca County, however, Fishbeck offers no evidence—nor even any allegations—that the alleged equal-protection violation resulted from an official

municipal policy. Accordingly, Fishbeck cannot recover from Lavaca County under Section 1983. *See Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

### C. Conspiracy to Violate Civil Rights under 42 U.S.C. § 1985

Fishbeck claims that Defendants conspired to deprive her of her constitutional rights under 42 U.S.C. § 1985. (Dkt. No. 10 at 16–17). Defendants argue that she fails to make out a prima facie case. (Dkt. No. 26 at 16–17).

Section 1985 prohibits conspiracies to intentionally deprive a person of their civil rights. 42 U.S.C. § 1985(3). "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Lockett v. New Orleans*, 607 F.3d 992, 1002 (5th Cir. 2010) (per curiam)).

But "in this Circuit, the only conspiracies actionable under Section 1985(3) are those motivated by racial animus." *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (alterations omitted) (quoting *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)); *see Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy."). Fishbeck does not bring any claims based on racial animus. So, Defendants are entitled to summary judgment on Fishbeck's Section 1985 claim.

### D. State-Law Claims

Fishbeck also brings two claims under Texas law: one for defamation and the other for civil conspiracy. (Dkt. No. 10 at 17–18). The Court entered an Order on September 29, 2022, dismissing the state-law claims against all Defendants except Furrh in his individual capacity. (Dkt. No. 21). Furrh now moves for summary judgment on both. (Dkt. No. 26 at 17–19).

#### 1. Defamation

"Defamation is a tort, the threshold requirement for which is the publication of a false statement of fact to a third party." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). "The fact must be defamatory concerning the plaintiff, and the publisher must make the statement with the requisite degree of fault." *Id.* "And in some cases, the plaintiff must also prove damages." *Id.* "'[P]ublication' simply requires communication of a defamatory statement to a third person." *Dietrich v. Chambers*, No. 03-18-00846-CV, 2020 WL 6478415, at *5 (Tex. App.—Austin Oct. 28, 2020, no pet.) (citing *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017)).

A plaintiff's status as either a private individual or a public official or figure determines the requisite degree of fault. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). "A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Id.* "[T]o establish actual malice, a plaintiff must prove that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was [false] or not.'" *Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413, 420 (Tex. 2000) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710,

726, 11 L.Ed.2d 686 (1964)). Reckless disregard means that "the publisher 'entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968)).

When evaluating a defamation claim, the Court considers the "allegedly defamatory publication as a whole in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it." *Klentzman v. Brady*, 456 S.W.3d 239, 254 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 515 S.W.3d 878 (Tex. 2017).

"Defamation may occur through slander or libel." *Doe v. Cruz*, 683 S.W.3d 475, 495 (Tex. App.—San Antonio 2023, no pet.) (citing *Tatum*, 554 S.W.3d at 623). "Slander is an orally expressed defamatory statement, and libel is a defamatory statement expressed in written or other graphic form." *Id.*

Furrh moves for summary judgment on Fishbeck's defamation claims. (Dkt. No. 26 at 17–19). In her deposition, Fishbeck identified several news articles, a Facebook post, and at least one Commissioners Court meeting that she alleges contain defamatory oral and written statements by Furrh. (Dkt. No. 26-1 at 13–16). Furrh divides the statements into two categories: written statements published in the newspaper and oral statements made at Commissioners Court meetings. (*See id.*). The Court addresses each in turn.

a. Libel – Newspaper Statements

The only evidence before the Court on the libel claim is a single news article, so the Court evaluates only the statements in that article.[6] The Hallettsville Tribune-Herald, a local newspaper, published an article about LCRS on December 30, 2020. (Dkt. No. 26-5 at 1). For the article, Furrh gave an interview about changes in the department since he took over as Director. (*Id.*). He told the newspaper that LCRS did not have the appropriate federal licenses required to carry certain medications they possessed when he took over. (*Id.*). He explained that this could have subjected LCRS to fines totaling three million dollars. (*Id.*). He also told the reporter that he needed to clean up dirty EMS stations, including removing bed bugs. (*Id.*).

Furrh argues that these statements do not satisfy the elements of a defamation claim because they are opinions, do not refer to Fishbeck, are not false, were not made with actual malice, and caused no pecuniary harm to Fishbeck. (Dkt. No. 26 at 18–19). The Court disagrees.

First, the article containing Furrh's statements to the Hallettsville Tribune-Herald constitutes published statements to a third party. And the statements are facts, not

[6] Fishbeck bears the burden of providing the alleged defamatory statements. After all, "[t]o recover on a claim for libel, a *plaintiff* must prove that the defendant (1) published (2) a false defamatory statement in written or printed material (3) to a third party." *Chang v. Link Nguyen*, 81 S.W.3d 314, 318 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (emphasis added) (citing *KTRK Television v. Felder*, 950 S.W.2d 100, 105 (Tex. App.—Houston [14th Dist.] 1997, no writ)). Furrh challenges that Fishbeck has no evidence supporting her defamation claims. (Dkt. No. 26 at 19). In response, Fishbeck must come forward with evidence supporting those claims. *See Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010). She has not. Thus, to the extent that Fishbeck alleges defamation based on statements other than the one in the Hallettsville Tribune-Herald, Fishbeck has not shown a genuine issue of material fact on those claims.

opinions. Either LCRS had the correct licenses, or it did not. Either the EMS stations had bed bugs, or they did not. These statements are not matters of opinion.

Second, while the article does not expressly name Fishbeck, "[i]t is not necessary that the plaintiff be specifically named in the communication to be defamatory." *Klentzman*, 456 S.W.3d at 254. A publication concerns the plaintiff "if persons who knew and were acquainted with h[er] understood from viewing the publication that the defamatory matter referred to h[er]." *Id.* This article is about changes to LCRS since Furrh took over. The clear inference is that any deficiencies in the department are attributable to the previous Director, who is easily identifiable as Fishbeck. Therefore, the statements concern Fishbeck.

As to the degree of fault applicable here, Furrh asserts that Fishbeck is either a public official or a limited-purpose public figure, thus requiring actual malice.[7] (Dkt. No. 26 at 17). As the Supreme Court of Texas has explained, "under the *New York Times* [*v. Sullivan*] rule, the actual-malice requirement is added to the burden of proof when the defamation plaintiff is a public official and the defamatory statement relates to the plaintiff's official conduct." *Greer v. Abraham*, 489 S.W.3d 440, 444 (Tex. 2016). In *Rosenblatt v. Baer*, the Supreme Court held that "the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or

---

[7] In his Reply, Furrh adds that actual malice is required because the statements are a matter of public concern. (Dkt. No. 28 at 8–9). But a public-concern analysis does not apply here because "the First Amendment requires private individuals to prove that statements made by *media defendants* on matters of public concern are false." *Brady v. Klentzman*, 515 S.W.3d 878, 883 (Tex. 2017) (emphasis added). Because Furrh is an individual—not a media defendant like a newspaper—the Court need not consider whether the matter is of public concern.

appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966). "[A]s is the case with questions of privilege generally[,] it is for the trial judge in the first instance to determine whether the proofs show respondent to be a 'public official.'" *Id.* at 88, 86 S.Ct. at 677.

"The public official category is by no means limited to upper echelons of government. All important government employees are subject to discussion by the people who employ them and by others who would comment on their behavior." Robert D. Sack, Sack on Defamation § 5:2.1, at 5–7 (5th ed. 2017) (citations omitted) (collecting cases); *see* Rodney A. Smolla, Law of Defamation § 2:102 (1999) ("[T]he Supreme Court has been expansive in defining who is a public official . . . .").

To that end, "courts have determined that a variety of elected or appointed municipal or county officials were 'public officials' under the *New York Times* rule, including individuals holding positions such as county surveyor, parish director of public welfare, town clerk, city manager, city contract compliance officer, and juvenile court administrator." Danny R. Veilleux, Annotation, *Who is "Public Official" for Purposes of Defamation Action*, 44 A.L.R.5th 193 § 2[a] (1996) (collecting cases). Indeed, the Supreme Court in *Rosenblatt* recognized a "substantial argument" that the supervisor of a county-owned ski resort who was "employed by and directly responsible to" the county commissioners was a public official. *Rosenblatt*, 383 U.S. at 77, 87, 86 S.Ct. at 671, 676. After all, the "public regarded [the supervisor] as the man responsible for [the ski resort's]

operations, chargeable with its failures and to be credited with its successes." *Id.* at 87, 86 S.Ct. at 676.

Fishbeck fits comfortably within the public-official category. As the head of a county department with eight full-time employees, ten volunteers, and more than a million dollars under her control, (Dkt. No. 26-1 at 9); (Dkt. No. 27-5 at 4), Fishbeck exercised "substantial responsibility for or control over the conduct of governmental affairs," *Rosenblatt*, 383 U.S. at 85, 86 S.Ct. at 676. And as the Director of LCRS, Fishbeck was "responsible for its operations, chargeable with its failures and to be credited with its successes," which the Supreme Court recognized as a "substantial argument" in favor of public-official status. *Id.* at 87, 86 S.Ct. at 676. Moreover, courts across the country have held that municipal officers in roles similar to Fishbeck's are public officials. *See* Veilleux, *supra*, 44 A.L.R.5th 193 § 4 (listing "town clerk," "director of a county animal control division," "director of public welfare" for a Louisiana parish, "parish treasurer," "city tax assessor," and "juvenile court administrator" as among the municipal officers that courts have held to be public officials). Fishbeck is therefore a public official for the purposes of the *New York Times v. Sullivan* actual-malice standard.[8]

---

8 That Fishbeck no longer holds the office does not have "decisional significance" unless she "is so far removed from a former position of authority that comment on the manner in which [s]he performed h[er] responsibilities no longer has the interest necessary to justify the *New York Times* rule." *Rosenblatt v. Baer*, 383 U.S. 75, 87 n.14, 86 S.Ct. 669, 676 n.14, 15 L.Ed.2d 597 (1966); *see also Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1069 (5th Cir. 1987). "Despite this caveat in *Rosenblatt*, the instances in which the passage of time will be held to eliminate the actual malice standard are so rare as to be virtually nonexistent: lower courts have consistently refused to permit the passage of time to destroy public official status for speech relating to the activities of the official while in office." Smolla, *supra*,§ 2:102 (collecting cases). "Thus, when the defendant's statement related to the plaintiff's alleged conduct that occurred while the plaintiff was still (continue)

The next question is whether the allegedly defamatory statements relate to Fishbeck's official conduct. *See Sullivan*, 376 U.S. at 279–80, 84 S.Ct. at 725–27. This inquiry is easily answered. In *Garrison v. Louisiana*, the Supreme Court stated that "anything which might touch on an official's fitness for office is relevant" to her official conduct. 379 U.S. 64, 77, 85 S.Ct. 209, 217, 13 L.Ed.2d 125 (1964); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974) (stating that society's interest in a public official "is not strictly limited to the formal discharge of official duties"). Here, the statements concern Fishbeck's alleged failures to perform core duties of her office—i.e., maintaining the required federal licenses and keeping the LCRS facilities in good condition. (*See* Dkt. No. 26-5 at 1). The statements thus relate to Fishbeck's official conduct.

Because Fishbeck is a former public official and the allegedly defamatory statements relate to her official conduct, Fishbeck must satisfy the actual-malice standard. And "where the factual dispute concerns actual malice . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by *clear and convincing evidence*." *Anderson*, 477 U.S. at 255–56, 106 S.Ct. at 2514(emphasis added).[9]

---

serving as a public official or candidate, most federal and state courts have decided that plaintiff's claim should be governed by *Times*' knowledge-or-reckless-disregard rule to the extent otherwise applicable. Commentators agree." Joseph H. King, *Whither the "Paths of Glory": The Scope of the New York Times Rule in Defamation Claims by Former Public Officials and Candidates*, 38 Vt. L. Rev. 275, 289–90 (2013) (footnotes omitted) (collecting cases and authorities).

9 In *Huckabee v. Time Warner Entertainment Co.*, the Texas Supreme Court recognized that "to prevail at trial, a plaintiff must establish actual malice by clear and convincing evidence." 19 S.W.3d 413, 420 (Tex. 2000). But it "decline[d] to adopt the clear-and-convincing requirement at (continue)

"[T]o establish actual malice, a plaintiff must prove that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was true or not.'" *Huckabee,* 19 S.W.3d at 420 (quoting *Sullivan*, 376 U.S. at 279–80, 84 S.Ct. at 710). And "[t]o establish reckless disregard, a public official or public figure must prove that the publisher 'entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325). "Malice is a subjective standard: The 'crux of the actual-malice inquiry is whether the defendant subjectively has significant doubt about the truth of his statements at the time they are made.'" *Smith v. Wal-Mart Stores, Inc.*, 980 F.3d 1060, 1063 (5th Cir. 2020) (quoting *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 431 (5th Cir. 2009)).

Defendants assert that Fishbeck "has no evidence proving the falsity of the statements or that Defendant Furrh made the statements with actual malice." (Dkt. No. 26 at 19). When "as here, a defendant moves for summary judgment and correctly points to an absence of evidence" supporting a claim on which the plaintiff bears the burden of proof at trial, "summary judgment should be granted for the defendant unless the plaintiff produces summary judgment evidence sufficient to sustain a finding in plaintiff's favor on that issue." *Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010).

Fishbeck responds by asserting that "[t]here is clear evidence Defendant Furrh made [the] statements" at issue, and "[w]hether these statement are true or false is a question of fact to be determined by the jury." (Dkt. No. 27 at 7). She does not point the

---

the summary judgment stage." *Id.* at 421. *Huckabee*, however, was based on differences between Texas and federal procedure and thus does not apply in federal court. *See id.* at 421–23.

Court to any evidence supporting a finding of falsity or actual malice. Accordingly, Furrh is entitled to judgment as a matter of law on Fishbeck's libel claim.

b. Slander – Commissioners Court Meeting Statements

Furrh also argues that any statements he made during Commissioners Court meetings occurred after he became Director of LCRS and were made in his official capacity. As a result, Fishbeck's slander claims are barred by the Texas Tort Claims Act ("TTCA"). (Dkt. No. 26 at 17–18). Alternatively, Defendants argue that any statements Furrh made at Commissioners Court meetings are subject to legislative privilege and therefore cannot be the basis of a defamation claim. (*Id.* at 18). The Court agrees that the TTCA bars suit for defamation against Furrh.

The evidence of statements made at the Commissioners Court meeting comes from Fishbeck's deposition. She alleges that at a Commissioners Court meeting in September 2020, Furrh alleged that Fishbeck failed to maintain proper Drug Enforcement Administration ("DEA") licenses and "said that there was filth and . . . bed bugs and . . . stuff like that." (Dkt. No. 26-1 at 13–14); (Dkt. No. 26-10 at 4). Furrh was hired in August 2020, (Dkt. No. 26-1 at 13); (Dkt. No. 26-10 at 4), so if he was addressing the Commissioners Court as Director of EMS in September, he would have been acting in his official capacity. To the extent the statements were made in Furrh's official capacity, they are barred by the TTCA for the reasons laid out in the Court's September 29, 2022, Order dismissing the defamation claims against the other Defendants. (*See* Dkt. No. 21 at 9–11) (explaining that the TTCA bars suits for intentional torts against governmental actors where immunity has not been waived).

**2. <u>Civil Conspiracy Under Texas Law (against Furrh)</u>**

Finally, Fishbeck brings a state-law conspiracy claim against Furrh—the individual who replaced her as LCRS Director—alleging that he conspired with the other Defendants to violate her equal-protection rights by firing her unlawfully. (Dkt. No. 1 at 17–18). Defendants argue that Fishbeck cannot establish certain elements of civil conspiracy. (Dkt. No. 26 at 19). There are five: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Texas civil conspiracy is a derivative tort where a defendant's liability depends on the commission of an underlying unlawful act. *Id.* at 138. Therefore, "[f]or liability to attach, there must be an unlawful, overt act in furtherance of the conspiracy." *Massey*, 652 S.W.2d at 934. Each defendant is responsible for all acts done by any of the conspirators in furtherance of the conspiracy. *Agar Corp.*, 580 S.W.3d at 140. And "the damages that matter come from the underlying wrongful act, not the conspiracy itself." *Id.* at 142.

Here, the alleged conspiracy is between Furrh and the other Defendants to wrongfully terminate Fishbeck in violation of the Equal Protection Clause. *See supra* Section IV(B)(3). As discussed above, there is a fact question on the equal-protection claim, so elements four and five are met. *See supra* Section IV(B)(3). That leaves only the first three elements: whether there is evidence of a meeting of the minds between two or more Defendants as to the wrongful termination. *See Agar Corp.*, 580 S.W.3d at 141.

To succeed on her state-law civil-conspiracy claim, Fishbeck must prove specific intent. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). It is not enough that Fishbeck's unlawful termination was one consequence of Defendants' conspiracy. *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (citing *Riley*, 900 S.W.2d at 719). Fishbeck must show that it was the *purpose* of the conspiracy. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010). Thus, at summary judgment, Fishbeck must show a fact issue on whether Furrh conspired with Defendants to fire her because of her sex—i.e., that he acted with the goal of violating her equal-protection rights.

To carry this burden, Fishbeck may rely on circumstantial evidence and "reasonable inferences from parties' actions." *In re Gothard*, No. 12-23-00296-CV, 2024 WL 739785, at *2 (Tex. App.—Tyler Feb. 22, 2024, orig. proceeding) (citing *In re Lipsky*, 411 S.W.3d 530, 549 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015)); *Lesikar v. Rappoport*, 33 S.W.3d 282, 302 (Tex. App.—Texarkana 2000, pet. denied) ("Conspiracy may be established by circumstantial evidence.").

Here, Fishbeck has presented several pieces of evidence to substantiate her claim. She has submitted proof that Furrh was communicating with some of the Commissioners Court members before Fishbeck's termination and Furrh's hiring. (*See* Dkt. No. 26 at 7). She also offers: (1) an email that Furrh sent to the Lavaca Republican Party that endorses Judge Mudd's election, (Dkt. No. 27-7 at 1); (2) text messages from a friend stating that Furrh frequently visited the courthouse and Mudd before Fishbeck's termination, (Dkt. No. 27-8 at 1–2); and (3) her own testimony that Furrh gifted an old ambulance to the department, (Dkt. No. 26-1 at 24). Fishbeck further testified that Defendant Bates

repeatedly referenced Furrh during the Commissioners Court meeting when she was terminated. (*Id.* at 5).

When viewed in the light most favorable to Fishbeck, this record shows a genuine dispute as to whether Defendants and Furrh had the specific intent to conspire against Fishbeck and fire her because of her sex. On the one hand, this evidence suggests that there may have been an agreement to terminate Fishbeck so that the Commissioners Court could replace her with a man—namely, Furrh. On the other hand, it could simply indicate that Furrh curried favor with Defendants in order to get the job regardless of the sex of the person holding the position. Thus, the evidence cuts both ways. This issue is therefore best left to the jury because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). Accordingly, a genuine issue of material fact exists on Fishbeck's state civil-conspiracy claim, and Furrh is not entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons above, Defendants' Motion for Summary Judgment, (Dkt. No. 26), is **GRANTED in part** and **DENIED in part**.

The individual Defendants are entitled to summary judgment on Fishbeck's statutory-discrimination claims because those statutes do not provide for individual liability. Defendants are also entitled to summary judgment on Fishbeck's procedural-

and substantive-due-process claims and Section 1985 claim. Furrh is entitled so summary judgment on Fishbeck's defamation claim.

Summary judgment is denied as to (1) Fishbeck's statutory-discrimination claims against Lavaca County; (2) her equal-protection claim against the individual Defendants; and (3) her civil-conspiracy claim against Furrh.

It is SO ORDERED.

Signed on February 28, 2025.

Drew B. Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**